Alright, we're back on the record, and the next case on the docket is Currie v. Union Pacific Railroad Company, cause number 5-13-0390. Before we get started, there's pending the appellant's motion for leave to cite additional authority. That was filed. There was also a response filed. We're going to grant that motion, and we will take into consideration the additional briefing that both parties did. Okay. Alright, so Mr. Jones. Good morning, Judge Stewart. Judge Spillmer. Judge Schwartz. Just by way of background, this case was tried in January of last year, and we had a three-count petition. Count 1 was for an injury that was alleged to have occurred on January 28, 2010. Count 2 was for a traumatic event that allegedly occurred on May 14, 2007. And then Count 3 was a cumulative trauma count. All three of the counts were brought for the same claimed injury, which was to his low back. The jury returned a defense verdict on Count 2, which is not subject to this appeal, which was the May 14, 2007 incident. They returned a verdict of 50 cents on the Count 1, which is the January 28, 2010 incident. Basically, as Plaintiff's Counsel argued on closing argument, he asked for a dollar in damages for that, because there really wasn't much by way of an injury. The jury followed his recommendation and returned a dollar verdict and found him 50 percent, the Plaintiff 50 percent fault, and awarded 50 cents in damages. That's how that came about. And all we ask on that count is that the court grant judgment notwithstanding the verdict, because there is really no evidence to support any verdict on that count. The real issue that we want to address today is on Count 3, which is the cumulative trauma count. On the cumulative trauma count, the jury returned a verdict for the Plaintiff. They awarded damages and found the Plaintiff 25 percent fault for contributory fault. The Plaintiff, as they presented their case, they presented their case talking about everything this man had done by way of work going back 20 years on this cumulative trauma count. And, of course, one of the things which is demonstrated by the evidence that the Plaintiff himself put into evidence is that he, Mr. Curry, received medical care and treatment for his low back on numerous occasions prior to the expiration of the three-year statute of limitations long before. He filed his case in April of 2010, so, therefore, any of his claimed injuries would have to, for the statute, three-year statute in the FELA cases, would have had to approve. 2007. 2007, exactly. And so what we know from the medical that the Plaintiff themselves put into evidence is that he treated with a chiropractor and another doctor who both gave testimony by way of deposition that was presented at trial. And we know that he had MRI scans done of his low back. The MRI scans and plant X-rays also were done dating back to, I believe, 2001, and they showed degenerative disc disease and bulging discs at L4, L5, and L5, S1. The most recent before the expiration of the statute of limitations was in 2006, an MRI that was ordered by Judge, excuse me, by Dr. Atkinson. So that's kind of the prelude of what the Plaintiff presents by way of evidence. The proof of the herniated disc did occur within the statute that you would argue is the limitations period, though, right? The Plaintiff presented evidence of a herniated disc that occurred. It was documented in May of 2007. Right, less than three years before that. That's correct. And the argument, too, in the case was we want to recover for this herniated disc that was the culmination of cumulative trauma over the years. Well, that wasn't exactly how it was presented, and that's the problem. In fact, if you read the Plaintiff's brief, the Plaintiff's brief is now recanting what they claimed that happened at the time of the trial. Dr. Gorenat was the medical doctor who actually did the surgery and who also rendered opinions in the case concerning the causation of this herniated disc. And Dr. Gorenat, in his testimony, is that the herniated disc was caused by the incident that occurred on May 14 of 2007, which the jury returned a defense verdict. He also said that because of that surgery, the future surgeries that he gave opinion that Mr. Curry may require in the future were related to the surgery that he did for the herniated disc related to the May 2007 incident. The Plaintiff now claims that even though the fact that they put on all this evidence of these preexisting problems and I quote right out of their brief, they say, we are not seeking and never were seeking money damages for degenerative disc disease and problems with bulging discs that predated the May 14, 2007 incident. We're only claiming for a herniated disc that was caused at L4, L5. And that's the claim that they put in their brief, which is diametrically different from what they claimed at trial. So we're put in a posture here that, first of all, there was a wealth of evidence. And I know that Judge Stewart, you wrote, and Judge Sponer joined in the Axe decision, which was a recent decision that came out of this court on the statute of limitations in FBLA cases. Unlike Axe, where Mr. Axe represented that he didn't really know until much later that his claimed injuries were related to his work. In this case, it was uncontradicted that Mr. Curry testified not only at trial, but his own doctors testified that he was telling the doctors that treated him, Dr. Atkinson and the chiropractor, that all of his back problems that he had had over the years going back to, I believe, 1996 or 2001, that those were all that he, in his mind, always believed were caused by his work. In fact, they're not. But when is he obligated to file his lawsuit? I mean, let's say the second year he works on the railroad, he comes home at night and he says, boy, it was a hard day at work, my back hurts. And I know that happened at work today. Does that mean anything that ever happens to his back the rest of his working career, he's got to file a suit then? If he's making a claim for an injury, yes, he does. Okay, so then he makes his claim, he goes in, he's got a back strain, and Drury awards him $2 instead of $1, like the one count in this case. So then later he has a herniated disc. Can he still file for that? He can file for a herniated disc, which he did in this case related to the traumatic event of May 14 of 2007, in which he claims that that's what caused it. And so that's the problem. Well, so suppose, you know, he goes in day in, day out, he develops degenerative disc disease, and that ultimately progresses to a herniated disc. You know, you're saying he has to file it before it progresses to the herniated disc. He has to file it as soon as he recognizes that he has a back problem of any kind that could lead to a herniated disc. Is that what you're saying? That's what the law says, Your Honor. I mean, that's a totally different situation than Axe. You know, I mean, in Axe, I mean, for one thing, the plaintiff in Axe had retired eight years before he actually filed his lawsuit, and way before the statute had run, he'd had surgery. He'd had surgeries on his knees, as I recall. Well, Mr. Curry, actually, also he had MRIs on his back, and he was told about these problems in his back. So this wasn't just a minor back strain that he was experiencing before April of 2007. These were back problems that he's going to doctors, and as a matter of fact, when he has these MRI scans that were done, whether or not they ultimately lead to something more severe, that the law says he has to file his claim within the time period that he knows that he has the problem. Well, what does he do then? And it's not uncommon for a laborer, such as a railroad worker, to have degenerative back disease as a result of hard work over the entire course of their career. Does he have to file every three years to collect what's happened in the last three years? He has to. I'm trying to, you know, it's hard to come up with a definition here. And you can read the case law, and you can pull out phrases from different factual situations, and some of them certainly support your argument. But, I mean, as a practical matter, what does a person in Mr. Curry's situation do? Once he knows that he's got these problems, and, in fact, in 2006, not only is he told that he's got this bulging disc in his back, he also has symptomatology that's the same symptomatology that he reports to Dr. Gornak when he sees him a year after this incident that occurs in 2007. So, and as a matter of fact, what happens here is that even though he knows that he's got this problem, which he claims is related to this incident in May of 2007, he continues to even work after that, even after he sees Dr. So that's the problem. Just because he decides to continue to work, this is not a decision that's on the statute of limitations by whether or not he chooses to continue to work. The key is the injury. When did the injury occur? And, in fact, of course, the jury instructions that are given to the jury is about injuries, and the damages stemming from those injuries. And in this case, as you can see from the actual issue instruction that was submitted to the jury, it says the plaintiff also claims that he sustained cumulative trauma, spine injuries, and damages during the course of his 20-plus years working for a defendant. So he can have it both ways. He can't come in here and say, okay, I had these injuries that I knew about, and I never pursued it because I didn't end up having back surgery until some time later, or I didn't know that I had this herniated disc until some time later. That is not what the law requires. The law requires that somebody can break a leg, have a fracture in a leg, continue to work because it's not a severe fracture, not displaced fracture, and they can go on and they can do it. It might not be as severe, but because they didn't have treatment for it, the individual could have further problems. It progresses. That's the nature of the beast, that things can progress. But it's not when it gets to the point that he decides that he's got to have surgery. This is not a situation where he's got some condition that he had absolutely no knowledge about, such as in some cases, for example, some type of a disease process that's going on, and all of a sudden he's got symptoms and he goes to the doctor and he's told that he's got asbestosis or something like that. That's not the situation here. We have a man who is repeatedly going to doctors for back problems, and the doctors are treating him for those back problems, and the doctors are saying that it's related to his work. Mr. Curry is saying it's related to his work. That causes him to have to file that lawsuit. So your position would be the first time that he goes to the doctor, complaining about his back, and says my work is what's causing this, that triggers the run of the state's limitations. Absolutely. When would that have been in this case? Judge, I think there's evidence back in 2001 or something to that effect. Right. And what was he reporting to the chiropractor or whoever at that point in time? To be honest with you, without looking at the record, I can't quote exactly what he said. But his testimony about those incidents, though, were that they were fleeting problems that were then overcome by the chiropractic treatment or other treatment. He went back to work, and he was fine for a period of time. Then he would have occasional back problems, right? So, I mean, you see the problem. I understand the problem. The thing that I'm trying to explain to you, Judge, if he goes to a doctor in 2001, and if the doctor is saying, you have an injury to your low back, whether it's a strain or whatever, and he believes, which he testified he did, that it was related to work, that's really not even a cumulative trauma claim. That's a claim that he's claiming. I injured my back, whether it was a minor strain or whatever, and he makes his claim. But if there wasn't any incident, I mean, he goes to work, and he works hard every day, and it's back-breaking work. And it is a cumulative trauma type thing. But then, of course, one of the things he's got to prove under the FLA, not just that he did back-breaking work or didn't work at the railroad, he has to prove that there was some negligence that caused the back. And so the problem with that. We're on the session limitations right now. So here, if he believes that he's got an injury before 2007, which I think there's no dispute in this record if that's the case, that he had an injury before 2007, which is the same thing that he's claiming in this case, which is a disc at L4, L5, which was ultimately surgically repaired, that causes him to, at that point, take some action. If he's claiming that that's related to his work. And that's what the claim was. But now the plaintiff takes a different position. If you read the brief, they're saying, we're not claiming that degenerative disc disease for things that happened before. We're only claiming for a herniated disc that occurred at L4, L5 level, which Dr. Gornett treated. And so they don't have any medical testimony from any of Dr. Gornett saying that the disc that he operated on at L4, L5, was injured as a result of the accident, excuse me, as a result of cumulative trauma over his years. In fact, Dr. Gornett specifically says that, in my opinion, based upon reasonable degree of medical certainty, that herniated disc was caused by a traumatic event that occurred in May of 2007. He even goes down and says, I don't care if the date was wrong, whether it was May 14th or May 9th, the plaintiff gave me this history that that's when his symptoms started, and that's why I cautiously connected to that. And then so the plaintiff's attorney even asked Dr. Gornett about the work that he had done over his years. He gives him a hypothetical. And Dr. Gornett says, and then that hypothetical, he says, I don't say that the work so much caused an injury. He says what the work does is it caused him to have symptoms. And that is not an actual cause of action, the fact that somebody has symptoms. I may have a bad back, and the fact that I go out and do some type of exercise or go to work, I may have symptoms, but the fact that I went out and exercised or I climbed stairs and I developed symptoms, that's not what caused the injury. And that's a very important distinction in this case. The fact that he has symptoms does not cause, it's not the injury. The injury that he's claiming in this case is an injury to an L4-L5 disc, which was documented with an MRI, I believe, sometime in late May of 2007, which the plaintiff, uncontradicted testimony that they put in, that that was caused by this incident of May 14, 2007, that the jury returned a verdict against him on. So now, so to get away from the fact that he's got all these preexisting problems, the plaintiff says in his brief, and I'll quote you from his brief. Page 16 of the plaintiff's brief. Excuse me. Page 15. The first full paragraph. But those were not, those were just temporary, intermittent, and transitory symptoms. Okay, if that's all they were, then why does he have a claim here for cumulative trauma? But we go off. Curry's permanent disability was the tear or herniation in the disc between his fourth and fifth lumbar vertebrae, L4-L5. Go ahead and finish your thought. Thank you. That was causing his persistent shooting pains through his back and his right leg. There is no evidence in this case by which Curry reasonably should have known before April 28, 2007, that he had a herniated disc. In fact, UP doesn't even identify testimony from any of the medical experts in the case, even its own expert, that Curry even had a L4-L5 disc before April 28 of 2007. If this injury did not even manifest itself until after April 28, 2007, Curry obviously could not have known he suffered a permanent disability before that. For that alone, there is no basis for the jury to conclude that Curry's claim was to be fired by the statute of limitations. So they're not claiming that all these things that happened before that, these temporary symptoms or the fact that he had degenerative disc disease are what the claim is about. They're saying that it's this herniated disc that occurred after April 28 of 2007, on May 14, 2007, as a result of a traumatic event that the jury turned him away on that claim. All right. We'll give you time to rebuttal. Thank you, Mr. Judge. Thank you. Mr. Wolf? May it please the Court. My name is Nelson Wolf, and I'm here on behalf of Plaintiff Don Curry. This Court should affirm the judgment that was rendered below following a seven-day trial and after the denial of the post-trial motions because that was the proper verdict and the proper judgment under the law and under the evidence. The principal issues that have been argued here today deal with the statute of limitations and the sufficiency of the evidence by which to support a verdict on the cumulative trauma claim with regard to medical damages and wage loss. Just by way of background, I think it's important to identify what is not contested by the railroad for the purpose of this appeal. Number one, the railroad does not challenge the sufficiency of the jury's finding in the trial court's judgment that it failed to provide reasonably safe working conditions from an ergonomic standpoint, that it negligently exposed Don Curry, a 20-year track worker, to unsafe working conditions as a result of reducing the work roles, the number of employees doing track maintenance work, while at the same time increasing the number of punitive overtime hours. That's the wrong term. Punitive overtime hours that were mandatory. It wasn't voluntary. Moreover, this railroad was aware that thousands of other workers had notified it of on-duty injury cumulative trauma claims. And the railroad was aware of not only those injuries, but it was aware of the developing medical science that associated an increased risk of developing these wear and tear injuries over time with an increased exposure to work risk factors such as repetitive bending and heavy lifting and so forth. The railroad possessed, with superior information to that of a common track worker, instead of sharing that information to educate employees about what they might be able to do to reduce the risk, they suppressed that information. And so that profit-over-safety mentality has not been challenged here on appeal, nor does the railroad challenge the fact that Don Curry underwent surgery at L4-L5 for a herniated disc. Not for a bulging disc, but for a herniated disc, and that's medically significant. The railroad does not dispute that it was only after that surgery and only after that diagnosis, which was well within the statutory period, that Don Curry missed his very first day of work at the railroad on account of any back problems. And the back problems which were reported in the early part of Don's career as a result of just what he understood to be a hard day's work are far different than those associated with a herniated disc that was diagnosed later on. The loss of earning capacity, and this is still a young man about 45 years of age after working for over 20 years at the railroad, he had a substantial loss of earning capacity which flowed from the herniated disc and the surgery for that herniated disc, and he had significant medical expenses for the past and future related to that. And just to jump to what I think is a secondary point to clean that up first, because it won't take very long, is that there's a challenge by the railroad as to the sufficiency of the evidence to support the jury's finding and the judgment that there was a causal, sufficient causal connection between the cumulative trauma and the diagnosis of herniated disc and the need for this surgery. And, of course, the sufficiency of the evidence is viewed in the light most favorable to the verdict and to the plaintiff in this case, and Dr. Granat's testimony specifically was that the cumulative trauma to which Don was exposed did contribute to the symptoms that led to the surgery. This is an issue, this back problem of the herniated disc, is what doctors call multifactorial epidemiologists, which is not part of the record here because it's not challenged. This is a multifactorial thing. So the mere fact that Dr. Granat, who happens to be a spinal consultant for the St. Louis Cardinals and whose credentials are not impeached, the mere fact that he attributes the cause of the herniated disc to multiple things does not undermine the sufficiency of the evidence to support the verdict of a causal connection to cumulative trauma. This court addressed this same type of issue in another FBLA case about 10 years ago in Hahn, H-A-H-N, which has been cited in the briefing, and it said that circumstantial evidence about what might or could have been a contributing cause is sufficient under the FBLA. It may not be sufficient under Illinois common law for a fender-bender case, but it is sufficient under the substantive law which guides this case. There was also evidence from a family doctor who testified that the herniated disc was caused by the cumulative effect of work. So simply stated, with respect to that secondary issue, there was sufficient evidence such that the jury's determination should not be disturbed. Now, with regard to the more significant issue that the railroad challenges, which was the subject of most of the questioning, is the statute of limitations. And I think it's clear that the courts that have evaluated this and are faced with the type of review that you are facing here today, it's important to be guided by what the law is that's set forth in the FBLA, but also what the United States Supreme Court has said with respect to this issue. There have been many other courts around the country that have addressed this issue, but the United States Supreme Court, I believe, has addressed it only most recently as 1949 in the Urey v. Thompson case. Both parties here acknowledge that that is precedent that's binding on this court and every other court that faces this issue. And that was the decision that discussed, perhaps for the first time, what the statute of limitations should be, not for a traumatic one-time injury, but for a cumulative injury or an occupational disease such as this. And the court noted what has been off-cited with regard to FBLA cases, that law which came about before there was even state workers' compensation, for the legislative stated purpose of providing a humanitarian and a liberal remedy to be construed favorably to railroad workers, that even with the discovery rule for the statute of limitations, that that rule should not and must not be mechanically or technically applied to deprive railroad workers who have legitimate injuries that are work-related. In that case, the court was faced with silicosis as a disease that railroad workers suffered as a result of inhaling silica, which was used, I believe, for sanders for the old locomotives. And every time he inhaled, he experienced symptoms, or not every time, but frequently would experience symptoms. And the court was very clear to say that each exposure or each breath does not give rise to a separate cause of action, and simply because there are minor symptoms doesn't give rise to a cause of action either. Instead, what the court held was that there is no compensable injury subject to the FBLA until the accumulated effects become manifest. And so the silicosis is what became manifest in that case, and importantly, the court tethered that situation, that medical situation, with an important distinction that applies here, and that is when the disease results in a disabling condition. Because in that case, that employee continued to work for 30 years, notwithstanding exposure to silica, and filed suit only one year after he was first disabled from railroad work because his symptoms had progressed. And the court rejected a similar railroad argument that the case was not timely filed. And the rationale was that if, like Judge Stewart, you pointed out, that if the case had to have been brought earlier and the other claims were exhausted, then legislative intent of the FBLA would be completely thwarted. In other words, the court said that to bar claims under those types and this type of situation would render the FBLA remedy delusive and thwart the progressional intent to compensate railroad workers. And so there was no jury issue in that case. The court ruled as a matter of law that the case was timely filed. In such a case, law applies directly here. In this case, even though there is some dispute about some of these records, because Mr. Jones points out some MRI in 2006, I think it was in 2005, and so perhaps he misspoke, what is undisputed is that there was never a diagnosis of a herniated disc until within a statutory period of time. And it was within three years after that diagnosis that suit was filed. It wasn't in this situation where Don got the news of this herniated disc and filed a lawsuit right away and kept working until he could no longer work, but the case was filed within three years of having that first information. It's also undisputed that during the course of his employment that he did have some other MRIs, but those MRIs in each instance before the statutory period were interpreted by all of the doctors as negative for a herniated disc. And so to suggest that a suit should have been filed for a herniated disc before the diagnosis would be completely illusory as far as the remedy under the FDA, and it lacks common sense. There's also no dispute that Don ever missed a day of work on account of any of these globally referenced back problems, which were nothing more than strains associated with daily work at worst. And there was no claim brought in this trial seeking compensation for those periodic strains. There was not even a claim that pain and suffering damages should be awarded for those strains. The closing argument was closely tethered to the claim associated with the herniated disc or injuries associated with the herniation and for the surgeries and the resulting residual disability occurrence. Can you respond to your opposing counsel's argument then that there was a lack of medical proof of causation for the cumulative trauma injury? In other words, he argues that, on the one hand, you're saying that the jury properly awarded all this on the cumulative trauma case, but your expert actually opined that the herniated disc was caused by the May 14, 2007 injury, and he didn't specifically opine that it was caused by cumulative trauma. And I heard you say earlier, I mean, he did say symptoms. What about that? That's sufficient, Your Honor, in and of itself. But please don't lose sight of the fact that the record also demonstrates that the family doctor, Dr. Antonson, Ingrid Antonson, also expressed the opinion that the injury was caused by the cumulative effect of work. So that would alone be sufficient. But Dr. Ornette's testimony that the cumulative trauma was a contributing factor is sufficient under the Hahn case here and under the Epiolite standard for causation, which has been characterized as only needed to be as thin as pigeon bone broth in order to support the point. Pretty thin, huh? It's as thin as you can imagine. Aronson did testify, you're saying, that his injuries were caused by cumulative trauma of work. Yes, Dr. Antonson. So there was medical proof. There was more medical proof. On that specific issue. More medical proof than just Dr. Ornette, but I would suggest that Dr. Antonson testified. That was before 2007? Talked to the doctor before 2007 or not? If you're talking about Dr. Antonson, what did she relate the herniated disc to? Yes. So if that's your question, Your Honor, she related the herniated disc to the cumulative effect of his work history. She didn't limit it to within the three years before the day of the diagnosis because that would be impossible. There's no way that that could be done any more than which breath of silica was responsible for triggering the silicosis, and that's why this remedy should be afforded in this case because over time you cannot bring a single claim. And I guess to jump right to that, the railroad is indeed suggesting, if not acknowledging it, and what the court heard is clearly apparent through their briefing and the arguments that they've made, is that they would suggest that the low back pain, not the herniated disc, that that triggers the obligation to file a suit, and that was first reported in 1997. And so we're talking about 10 years before the diagnosis of a herniated disc, and at that time there was no lost time from work. There was merely chiropractic treatment. 13 years before surgery, 10 years before the herniated disc was diagnosed. It's the complete opposite of the X case, which I believe is the only decision that this court has addressed the statute of limitations in, and that is clearly distinguished where the employee knew about it, they had the surgery, and had been retired for many, many years. It's unclear under those circumstances where the principles underlying the statute of limitations of trying to prevent the presentation of stale evidence to balance the fairness to the railroad would even apply. And clearly in that case it was applicable, but just as clearly it's not applicable in this case, where Mr. Curry was not diagnosed with a herniated disc until within the statutory period of time. But the practical implication of compelling a railroad worker who experiences mere pain and soreness to file a lawsuit at the occurrence of each such instance would result in a flooding of frivolous lawsuits, I believe. Some would suggest to monitor the court systems, and that certainly is contrary to public policy, because there would be no damages at that point in time in the way of lost wages, and not necessarily even in the way of wages. And I think that that claim would open up the floodgates to suggest that future claims would be barred, and that also would be contrary to what the epilogue was designed to do. All right, so we've identified some cases that have addressed this similar type of issue in Mickey and in Sebalca. The Missouri Court of Appeals and transfer to the Missouri Supreme Court was denied by the court in Mickey, and that's what the trial court relied upon here. So because Mr. Curry is not making a claim for any injury that predated the herniated disc, this case was timely filed and properly was withheld from the jury. If it had been submitted to the jury, it would have been subject to a JNOV, and so the trial court properly exercised this gatekeeper function by directing a verdict out in favor of Michael. I'm prepared to address any of the other points that the railroad has raised, although I don't think they merit further response beyond what's already included in the brief. If there are no further questions, then I'll sit down. Thank you for your time. Mr. Jones, any rebuttal? First of all, counsel's identification of the Urey case allegedly supporting his position is misplaced. Urey, as he pointed out, was a silicosis case. It was not a case where this individual had longstanding problems and was seeking medical care and treatment over several years for the problems, which is the scenario we have in this case. And for Mr. Wolf to stand before you and say this case did not involve any type of injury for degenerative disc disease or problems that predated the herniated disc at L4-L5 is contrary to what they did at trial. Why did they put on the testimony of the doctors? Why did they present the testimony of Mr. Curry, of everything that he did during the course of his career, and the fact that he was complaining of problems in receiving medical care and treatment for his low back throughout this entire period of time? And as I pointed out previously, look at the very jury instruction. It says, the plaintiff also claims he sustained cumulative trauma, spine injuries, and damages during the course of his 20-plus years of working for the defendant. And say, the plaintiff goes in and he comes in here now and says, okay, well, notwithstanding the fact that we submitted it on that theory, notwithstanding the fact we put on all this evidence to put the jury in the mind frame that that's what they're recovering from, notwithstanding the fact all we're really suing now for is for an L4-L5 disc. And then they have, although I believe clearly under the law at a minimum, this was a jury question for the jury to decide on the issue of statute of limitations. I believe the evidence actually supports that he should have directed a verdict on the statute of limitations in judgment NOV on the statute of limitations on count three of the complaint for all the reasons that we set forth in our brief. But at a minimum, when you have this evidence, you put in all these claims, and we are deprived the opportunity to tell the jury about the statute of limitations, that the jury is, they're asked to assess whether or not any of this medical testimony and treatment that the plaintiff testified about had anything to do with his injury that he was claiming in the case and deprive the railroad from putting on evidence that there's a statute of limitations. Did he know of this within three years prior to the claim of injury? So under your argument, could there ever be a cumulative trauma back injury claim under the FELA? Certainly there could. I mean, it would only have to be where the plaintiff basically never went for medical treatment, even though he had back problems, or there's no indication that he ever connected it to his work. But how could that be if you are a person who does back-breaking work for a living? You understand what I'm saying? I understand exactly what you're saying. But, yes, the plaintiff, there's situations where somebody could have had a cumulative trauma back injury and not know about it, such as what you have in the URI case, which is what's cited by the plaintiff's counsel. But that's not all we have here. We have a plaintiff who is going to doctors, receiving care and treatment from doctors, who's not just going in and saying, okay, pat him on the back. They're sending him for diagnostic studies. They're sending him for x-rays. They're sending him for MRIs. And they're telling him that he's got these problems. And lo and behold, the MRI in 2005 or 2006 clearly shows that he's got a bulging disc at L4-L5. A bulging disc is Dr. Gornett admitted in cross-examination. Even though that's another issue, I wasn't able to complete my cross-examination with Dr. Gornett, and I don't have time to address it now, so I'll rely upon the briefing on that. But Dr. Gornett admitted once he has that disc, it doesn't go away. And so the plaintiff's claim is that he has all these problems related to the 20-plus years of work, and that he has a herniated disc sometime in May of 2007, and everything before is irrelevant, is meaningless. And then they go on in their brief and try to represent to you that that's not what they were claiming. Well, if that's not what they were claiming, then why was the evidence presented and why was the jury instructed as they were instructed in this case? So with all due respect, I ask the Court to grant relief. Thank you. Thank you both for your briefs and arguments in this very interesting case. We're going to take this matter under advisement and issue a decision in due course.